IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMIGUELA PACI, | ) | |
| | ) | 14-cv-1158 |
| Plaintiff, | ) | |
| | ) | Hon. Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| ELMHURST AUTO WERKS, LTD, d/b/a | ) | |
| ELMHURST BMW, LTD, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND
PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER
CROSS-MOTION FOR SUMMARY JUDGMENT**

NOW COMES, Plaintiff Emiguela Paci ("Plaintiff") individually and on behalf of a class, and opposes Defendant Elmhurst Auto Werks, LTD, d/b/a Elmhurst BMW, LTD ("Defendant" or "BMW") Motion for Summary Judgment "on both the Plaintiff's individual and class action claims." (R. 23, Def. Memo., p. 2). Plaintiff also files her memorandum in support of her cross-motion, individually and on behalf of a class, moving this Honorable Court for the entry of summary judgment in Plaintiff's and the class' favor on the form of the receipt she was provided on February 11, 2014, which displayed her payment card's expiration date in violation of 15 U.S.C. § 1681c(g)(1).[1]

**INTRODUCTION**

Notably, BMW moved only for summary judgment against Plaintiff and the class, without answering the Complaint. BMW's unorthodox and risky strategy however comes with the consequence that the allegations in the complaint are deemed as admitted, being "admissions on

---

[1] Plaintiff is not pursuing any class claim involving the form of the January 8, 2014 receipt.

file." *Modrowski v. Pigatto*, 712 F.3d 1166, 1170 (7th Cir. 2013) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *Routes 202 & 309 & Novelties Gifts, Inc. v. Kings Men,* 11-5822, 2014 U.S. Dist. LEXIS 29446 (E.D. Pa. Mar. 7, 2014).[2]

BMW's motion should be denied as the February 11, 2014 electronically printed receipt that was provided to Plaintiff at an in store transaction with BMW is "any receipt" and the receipt was provided to Plaintiff "at the . . . transaction" under the plain langue of 15 U.S.C. § 1681c(g)(1). As a question of law, BMW willfully violated 15 U.S.C. § 1681c(g)(1) as the statute is clear, or alternatively as an issue of fact, BMW violated the statue with knowledge of its legal requirements. Therefore, Plaintiff and the class are entitled to summary judgment on their claim involving the receipt in the form of the receipt provided to Plaintiff on February 11, 2014.

Plaintiff likewise is individually entitled to summary judgment on the January 8, 2014 receipt because Plaintiff's allegation that the receipt she was provided contained her card's expiration date is deemed admitted. *Modrowski*, 712 F.3d at 1170.

### LEGAL STANDARD

A party is entitled to summary judgment as a matter of law where there is no genuine issue as to any material fact. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). In evaluating whether a party is entitled to summary judgment the court is to construe the evidence presented and all inferences that can be made from that evidence, in the light most favorable to the nonmoving party. *O'Conner v. DePaul Univ.*, 123 F.3d 655, 669 (7th Cir. 1997). Where both parties seek summary judgment, the court will "construe all inferences in favor of the party against whom the motion under consideration is made." *Kort v. Diversified*

---

[2] Per this Court's Standing Order, copies of unpublished electronic opinions are attached hereto as Appendix C.

*Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005) (*quoting O'Regan v. Arbitration Forums, Inc*., 246 F.3d 975, 983 (7th Cir. 2001)).

## FACTS

BMW did not file an answer, but instead elected to file its Rule 56 motion. Therefore, as a matter of law, all of Plaintiff's factual allegations in the Complaint, R. 1, are deemed admitted. *Modrowski*, 712 F.3d at 1170 (*quoting Celotex*, 477 U.S. at 324) (noting that the same strategy used by BMW here of filing a Rule 56 motion without answering the complaint, is an "unorthodox strategy" and "risky" as all a plaintiff needs to do is point to the "'admissions on file' to support his allegations."); *Routes 202 & 309 & Novelties Gifts, Inc.*, 2014 U.S. Dist. LEXIS 29446 * 25-26 (E.D. Pa. Mar. 7, 2014) (holding that when a party so notes "the 'admissions on file' contained within the unanswered" allegations against the opposing party, all factual allegations are deemed admitted for the purposes of a Rule 56 motion).

Defendant accepts Visa and MasterCard branded credit and debit cards and American Express and Discover branded credit cards. (PSMF ¶ 5)[3]. BMW knew about 15 U.S.C. § 1681c(g)(1)'s requirements, received notice and was contractually required to suppress payment cards' expiration dates from electronically printed receipts it provided the cardholder at the point of sale or transaction. (PSMF ¶¶ 6-11).

On January 8, 2014, Defendant Elmhurst BMW provided Plaintiff an electronically printed receipt at the point of sale that contained her Visa debit card's expiration date. (PSMF ¶¶ 16-17). On February 11, 2014, in regards to a rental transaction for a BMW, X3 xDrive35i, VIN 5UXWX7C5XE0E77095, Defendant Elmhurst BMW provided Plaintiff in person an

---

[3] "PSMF" refers to the separately filed document of Plaintiff's Statement of Material Facts and includes the exhibits that are attached to that separately filed document under L.R. 56.1 that correspond to each paragraph cited herein.

electronically printed receipt at its store location on Lake Street that contained her Visa debit card's expiration date on the receipt. (PSMF ¶¶ 13-15, 22-32).

## ARGUMENT

Defendant's challenge to the viability of Plaintiff's claim regarding the February 11, 2014 receipt turns on whether under the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the ("Fair Credit Reporting Act") FCRA, codified at 15 U.S.C. § 1681c(g)(1), the receipt is "any receipt" and whether it was provided to plaintiff "at the . . . transaction." Plaintiff argues that under the plain meaning of the statute the February 11, 2014 receipt at issue is "any receipt" and additionally under *Shlahtichman v. 1-800-Contacts, Inc.,* 615 F.3d 794 (7th Cir. 2010), she was provided the receipt "at the . . . transaction."

"Absent a definition supplied by the statute itself, we look to the ordinary or natural meaning of the term." *1-800-Contacts, Inc.,* 615 F.3d at 798 (citations omitted). In determining statutory construction a court, "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997) (*quoting United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240 (1989)). The inquiry ceases, "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. United States Postal Serv.,* 546 U.S. 481, 486, 126 S. Ct. 1252, 163 L. Ed. 2d 1079 (2006). Additionally, when the statute does not define a term a business should turn to Appellate decisions as the "logical place" for guidance. *Murray v. New Cingular Wireless Servs.,* 523 F.3d 719, 726 (7th Cir. 2008).

I.  **The February 11, 2014 Receipt, is a "Receipt" BMW provided Plaintiff at the "Transaction" under 15 U.S.C. § 1681c(g)(1)**

15 U.S.C. § 1681c(g)(1) provides that:

… *no person* that accepts credit cards or debit cards for the transaction of business *shall print* more than the last five digits of the card number or *the expiration date upon any receipt provided to the cardholder at the* point of sale or *transaction.*

15 U.S.C. § 1681c(g)(1) (emphasis added).

A.  **By Definition the Receipt is "Any Receipt" under 15 U.S.C. § 1681c(g)(1)**

"A rose by any other name would smell as sweet." William Shakespeare, *Romeo and Juliet*, Act II, Scene 2, *circa* 1597. However, "[a] merchant may not avoid the FACTA truncation requirements simply by labeling every receipt [by another name,] essentially what the plaintiff alleges the defendant did." *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 125 (S.D.N.Y. 2011). Defendant does not cite any case law that holds a "receipt" is limited to "sales receipts" involving the actual purchase of goods or services. Indeed, the definitions of "receipt" do not contemplate such a narrow reading of "sales receipts" as BMW argues, to the exclusion of all other receipts. Given the breadth of the word "any", BMW's narrow interpretation of the word "receipt" to a "sales receipt" is incorrect and not objectively reasonable.

15 U.S.C. § 1681c(g)(1) clearly by its language applies to "any receipt." 15 U.S.C. § 1681c(g)(1) ("any receipt"). The Seventh Circuit, and other Court of Appeals, in the context of statutory interpretation hold that the word "'any' means 'any,' regardless[.]" *Manning v. United States*, 546 F.3d 430, 436 (7th Cir. 2008); *Orange County's Credit Union v. Garcia* (*In re Garcia*), 709 F.3d 861, 864 (9th Cir. 2013) ("'Any' means *any*, and fancy cars are not excluded.") (original emphasis); *Coalition for Responsible Regulation, Inc. v. EPA*, 684 F.3d 102, (D.C. Cir. 2012) (*quoting Absent Ford v. Mabus,* 629 F.3d 198, 206, 393 U.S. App. D.C. 400 (D.C. Cir. 2010) ("Absent some compelling reason to think otherwise, ''any' . . . means

5

any[.]'"). Therefore, so long as the February 11, 2014 document at issue fits into any one definition of a "receipt", the document is "any receipt", as Congresses' use of the word "any" indicates that what a receipt is, is expansive.

"The [FCRA] statute does not define 'receipt,' but its common meaning is a 'written acknowledgment that something has been received.'" *Todd v. Target Corp.,* 10 C 5598, 2012 U.S. Dist. LEXIS 44362 (N.D. Ill. Mar. 30, 2012) (*quoting* Black's Law Dictionary at 1382 (9th ed. 2009)); Jerry M. Rosenberg, Dictionary of Retailing & Merchandising, p. 191 (1995) (Appendix A) ("**receipt:** written acknowledgement of value received"). Even Defendant's Memorandum acknowledges that a "receipt" is a, "'written or printed statement acknowledging . . . *that goods have been received*." (R. 23, Def. Memo., p. 6) (*quoting Oxford Dictionaries Online, 2014*) (emphasis added); (R. 23, Def. Memo., p. 10, *Merriam-Webster*) ("5. a writing acknowledging the receiving of goods[.]").[4] These definitions that define what a receipt is, do not restrict a "receipt" to a document solely demonstrating that a "payment" for the goods occurred. A receipt must simply be in writing showing that something has been received. This is precisely what occurred in this case in that there was a writing that acknowledged that Defendant provided Plaintiff a BWM, a good. (PSMF ¶¶ 13-15, 22-32).

Prior litigation also holds that "any receipt" covers more than just "sales receipts." In *Target Corp.*, the court found that the defendant could be found to have willfully violated the FCRA where it asserted that it believed that a "sales audit copy" was not a "receipt" under 15 U.S.C. § 1681c(g)(1). *Target Corp.*, 2012 U.S. Dist. LEXIS 44362 at *16. Likewise, in *Masters v. Lowe's Home Centers, Inc.*, 09-cv-255-JPG, 2009 U.S. Dist. LEXIS 49505 (S.D. Ill. June 11, 2009), Lowe's was sued for willfully violating 15 U.S.C. § 1681c(g)(1) on a "written

---

[4] BMW attached directly to its brief, not making the document an exhibit, a printout of what appears to be a webpage from www.Merriam-Webster.com. R. 23, PageID #:83.

memorialization of an in-person payment that [the plaintiff] made on her Lowes branded credit card at the Lowe[']s store in Glen Carbon, Illinois." *Id.* at * 2. *Lowe's* eventually settled paying $7,000,000 (seven million dollars) in gift cards to class members and $1,724,000 (one million seven hundred twenty-four thousand dollars) in attorney's fees and costs. *Lowe's*, Doc. 46, Settlement Agreement, pp. 8,13 (Jan. 10, 2011). Congress' use of the word "any receipt" includes those "receipts" at issue in *Target*, *Lowes* and here along with "any receipt" that may be generated when a credit card is presented as security for potential charges later being incurred, which might not be incurred, for example hotel mini-bars, on demand movies and room service.

Congress specifically wrote that 15 U.S.C. § 1681c(g)(1) applies to "person[s] that accept[] credit cards or debit cards for the transaction of business[.] 15 U.S.C. § 1681c(g)(1). Congress created only one exception when 15 U.S.C. § 1681c(g)(1) does not apply; when the "sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card." 15 U.S.C. § 1681c(g)(2). Nowhere in 15 U.S.C. § 1681c(g)(1) does it state that the debit or credit card must actually be charged in ordered for 15 U.S.C. § 1681c(g)(1) to apply. "Where Congress knows how to say something but choose not to, its silence is controlling." *In re Providence Television Ltd. Partnership*, 75 B.R. 139, 140 (Bankr. N.D. Ill. 1987) (*citing NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522-23 (1983)); *Griffith v. United States*, 206 F.3d 1389, 1394 (11th Cir. 2000) (citation omitted). 15 U.S.C. § 1681c(g)(1) simply cannot be reasonably read to exclude leasing agreements, security deposit and other instances where the consumer provides the person their credit or debit card information and an electronically printed receipt is provided the cardholder in regards to the transaction with their card's account information and expiration date on it. Such, conduct by a business does not

7

follow the intent of the Act to reduce the likelihood that a person's payment card will be compromised. (PSMF ¶ 37).

There is no factual dispute that BMW provided Plaintiff a rental vehicle, BMW, X3 xDrive35i, VIN 5UXWX7C5XE0E77095. (R. 23-1, Def. Memo, Ex. D; PSMF ¶¶ 23-32). There is likewise no factual dispute that BMW provided Plaintiff with a written acknowledgement that the BMW described above was provided to her for her to use. (Id). There likewise is no dispute that the BMW, X3 xDrive35i Plaintiff was provided has value. (PSMF ¶ 26-27). Under the expansive phrase "any receipt" in 15 U.S.C. § 1681c(g)(1) the electronically printed receipt that was provided to Plaintiff at BMW's store located at 466 W. Lake St., Elmhurst, Illinois, is included under the protections of the Act.

  **B.**  **15 U.S.C. § 1681c(g)(3) does not Alter that by Definition the Receipt is "Any Receipt" under 15 U.S.C. § 1681c(g)(1)**

BMW next argues that the receipt cannot be "any receipt" because of the language of 15 U.S.C. § 1681c(g)(3) "any cash register or other machine or devise that electronically prints receipts for credit card or debit card transactions". This technical requirement simply sets the "[e]ffective date [t]his subsection shall become effective" requiring a staggered implementation of the Act depending whether the point of sale terminal is already in use or later installed. 15 U.S.C. § 1681c(g)(3). 15 U.S.C. § 1681c(g)(3)'s plain language and Congressional intent however, does not limit FACTA's applicability to only "cash registers."

The plain language of Section 1681c(g)(3) indicates that 15 U.S.C. § 1681c(g) applies in addition to "cash registers" any "other machine or devise that electronically prints receipts for credit card or debit card transactions." 15 U.S.C. § 1681c(g)(3). This exact phrase has been interpreted by a Court of Appeals as "'cash register or other machine or devise' excludes machines that do no more than electronically display information. *Like a cash register, the*

8

*devise must print the receipt."* *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1209 (9th Cir. 2011) (emphasis added). Likewise, in *1-800 Contacts,* the Seventh Circuit saw this same language as signifying Congresses' intent that 15 U.S.C. § 1681c(g) "regulate[s] the types of receipts that document in-person transactions[.]" *1-800 Contacts*, 615 F.3d 794 at 800. There is no factual dispute that the February 11, 2014 transaction was face to face, which occurred in Defendant's store located on Lake Street in Elmhurst, Illinois. (PSMF ¶¶ 13-15, 23).

### C. BMW's "Offer of Contract" Argument is Waived and Without Merit

Defendant's final argument, comprised of one sentence, is that the receipt is at the very least an "offer of a contract" and not a contract. (R. 23, Def. Memo., p. 7). First, BMW's argument is not supported and therefore is waived. *Perry v. Sullivan*, 207 F.3d at 383 (7th Cir. 2000). Second, even with a "sales receipt" a contract is formed. *Commonwelath v. Sargent*, 2003 PA Super 150, 823 A.2d 174, 176-77 (Pa. Super Ct. 2003) ("A credit card receipt is a signed sales receipt that evidences a contract for the sale of goods between the buyer and seller. When a person signs a credit card slip, they are creating a contract, a legal relationship, stating that they will pay the amount indicated on the slip."). Additionally, even "sales receipts" on their face sometimes will contain contractual terms, for example, how long the merchant will accept a return of the merchandise or other warranties. (PSMF ¶ 33; PSMF Exhibit 3).[5]

### D. The Phrase "at the . . . transaction" in 15 U.S.C. § 1681c(g)(1) Requires that the Receipt to be Physically Provided to the Cardholder in a Store, as Opposed to the Receipt being Emailed

BMW next argues that the receipt was, "not provided to the Plaintiff at the point of transaction." (Def. Memo., p. 8). "Point of transaction" is not the phrase used in 15 U.S.C. § 1681c(g)(1). Congress in drafting 15 U.S.C. § 1681c(g)(1) used the word "or" which is

---

[5] If this Court has used a credit or debit card for the purchase of goods and has been provided a receipt with return or warranty language, Plaintiff requests this Court to take judicial notice that receipts can contain contractual language between the merchant and the consumer.

disjunctive, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 132 S.CT. 2065, 2072, 182 L. E.d. 2d 967 (2012), noting that a violation of 15 U.S.C. § 1681c(g)(1) will be violated when the receipt is provided either: (1) at "the point of sale"; *or* (2) "transaction"; either one will trigger a violation. In *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010), the Court addressed the meaning of the phrase, "at the point of sale or transaction" and held, "[a]s other courts had observed, the statutory reference to receipts provided at 'the point of the sale or transaction' [in 15 U.S.C. § 1681c(g)(1)] contemplates in-store transactions rather than electronic commerce." *Id.*, at 797. There is no question of material fact that the subject transaction in which Plaintiff was provided a rental BMW occurred in BMW's store located at 466 W. Lake St., Elmhurst, Illinois. (PSMF ¶¶ 13-15, 23).

Likewise, it is above debate that a "transaction" occurred between BMW and Plaintiff. Black's Law Dictionary defines a "transaction" as:

> ***Act of transacting or conducting any business; between two or more persons***; negotiation; that which is done; an affair. An act, agreement, or several acts or agreements between or among parties whereby a cause of action or legal rights occur. ***It may involve*** selling, ***leasing***, ***borrowing***, mortgaging or lending. Something which has taken place whereby a cause of action has arisen. In must therefore consist or an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, ***and by which the legal relations of such persons between themselves are altered.*** It is a broader term than 'contract'.

Black's Law Dictionary, p. 1496 (6th Edition 1990) (emphasis added) (Appendix B).

The Dictionary of Retailing & Merchandising defines "**transaction:** any agreement between two or more parties that establishes a legal obligation." Jerry M. Rosenberg, Dictionary of Retailing & Merchandising, p. 235 (1995) (Appendix A). Even BMW's citation to Merriam-Webster Dictionary's definition of "transaction", which uses the disjunctive "or", includes multiple types of "occurrences" which include "goods . . . are passed from one person . . . to another or 'something transacted; especially an exchange or transfer of goods[.]" (R. 23, Def.

Memo. p. 8). There is no factual dispute that the February 11, 2014 transaction to which the receipt memorializes in writing, involved leasing a BWM to Plaintiff, and that the BWM was passed to Plaintiff for her use. (PSMF ¶ 13-15, 22-32).

## II. The Intent of the Act Favor's Plaintiff's Position

"FACTA was intended to 'protect consumers from identity thieves' and 'to limit the number of opportunities for identity thieves to 'pick off' key card account information.'" *Barbieri v. Redstone Am. Grill, Inc.*, 07 C 5758, 2009 U.S. Dist. LEXIS 9309 * 3-4 (N.D. Ill. Feb. 6, 2009) (*quoting* S. Rep. No. 108-166, at 3 (2003)); *See also Cicilinne v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831 (N.D. Ill. 2008); *see also Harris v. Mexican Specialty Food, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009)). Here not only did BMW provide Plaintiff's expiration date, it provided any potential identity thief a treasure trove of other information, including a home address, birthdate, and a driver's license number that could be used to steal her identity. It would be inconsistent with the protections of the Act, to permit a merchant to provide the consumer at an in store location a document that had the very sensitive payment card information that 15 U.S.C. § 1681c(g)(1) prohibits being printed.

## III. The January 8, 2014 Receipt

Defendant is not entitled to summary judgment on the January 8, 2014 receipt because Plaintiff's allegation that the receipt she was provided contained her card's expiration date, (PSMF ¶¶ 16-17), is deemed admitted as an "admission on file." *Modrowski*, 712 F.3d at 1170.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER
CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, individually and on behalf of a class, moves for summary judgment on the form of the receipt that Defendant provided to her on February 11, 2014, and individually on the January 8, 2014, receipt. Plaintiff incorporates her arguments and facts above in support herein.

I.      **BMW Willfully Violated 15 U.S.C. § 1681c(g)(1) as a Question of Law**

The sole issue to determine is whether under the plain language of 15 U.S.C. § 1681c(g)(1) was BMW prohibited from printing credit and debit cards' expiration dates on any electronically printed receipt provided to the cardholder at the point of sale or transaction. Determining willfulness in this FCRA case is a question of law to be decided by the Court at the summary judgment stage. *Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 490-91 (7th Cir. 2012) *cert. denied* 133 S. Ct. 983 (Jan. 22, 2013) (noting "the Supreme Court of the United States treated willfulness [in an FCRA case] as a question of law and directed that judgment be entered in a defendant's favor without a trial."); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012) (same). *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007), is the seminal case regarding willfulness in the civil context. "According to *Safeco*, at least with unclear text and in the absence of authoritative guidance or case law, the appropriate and sole measure of recklessness is objective reasonableness. *Shell Oil*, 678 F.3d at 491 (Cudahy, J) (*concurring*) (*citing Safeco,* 551 U.S. at 70 n.20).

15 U.S.C. 1681c(g)(1), effective December 4, 2006, at the latest, provides:

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

"This section creates a uniform national standard requiring businesses that accept credit or debit cards to truncate the card account numbers (printing no more than the last 5 digits) and exclude card expiration dates on any electronically printed receipts." Conference Report on H.R. 2622, Fair and Accurate Credit Transactions Act of 2003 – (Extended Remarks – December 9, 2003) (Speech of Hon. Michael G. Oxley of Ohio In The House of Representatives, Friday, November 21, 2003).

12

> 15 U.S.C. 1681n(d), effective June 3, 2008, provides:
>
> (d) Clarification of willful noncompliance
> For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c (g) of this title for such receipt shall not be in willful noncompliance with section 1681c (g) of this title by reason of printing such expiration date on the receipt.

"Going forward [after the Clarification Act], companies will still have to meet the same strict rules Congress originally passed in fact[;]" the Clarification Act, "does not eliminate a business's obligation to properly truncate account number or to redact the expiration date from its receipts." *Barbieri v. Redstone Am. Grill, Inc.*, 07 C 5758, 2009 U.S. Dist. LEXIS 9309 at * 8 (N.D. Ill. Feb. 6, 2009) (*citing* 154 Cong. Rec. S4440 (May 20, 2008); (154 Cong. Rec. E925 (May 14, 2008)).

In *1-800 Contacts*, the Seventh Circuit acknowledged that the Clarification Act., Pub. L. 110-241, 122 Stat. 1565, (enacted June 3, 2008), codified at 15 U.S.C. § 1681n(d), is clear that willful noncompliance can be established if any person prints an expiration date on any receipt provided to the consumer cardholder at a point of sale after June 3, 2008. *1-800 Contacts*, 615 F.3d at 796 n. 1. In *Tommy Hilfiger*, the Third Circuit Court of Appeals held that as a matter of law that the printing of any part of a card's expiration dates violates FACTA. *Tommy Hilfiger*, 671 F.3d at 378. The Seventh Circuit reiterated again that the law is clear that including any portion of a credit or debit card's expiration date on electronically printed receipts provided to the cardholder at the point of sale violates 15 U.S.C. § 1681c(g)(1). *Shell Oil*, 678 F.3d at 489 (*citing Tommy Hilfiger*, 671 F.3d 371 (3d Cir. 2012) ("§1681c(g) prohibits printing any portion of a card's expiration date").

13

Prior court decisions involving statutory interpretation provide defendants with reasonable warning their conduct at issue would violate that statutory act. *United States v. Lanier*, 520 U.S. 259, 268 (1997). Courts in Northern District of Illinois have also consistently held payment cards' expiration dates were to be deleted or replaced with "* * * *". *Cicilline v. Jewel Food Stores*, 542 F. Supp. 2d 842, 848-49 (N.D. Ill. 2007); *Follman v. Hospitality Plus of Carpenterville, Inc.*, 532 F. Supp. 2d 960, 964 (N.D. Ill. 2007); *Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 786 (N.D. Ill. 2007). Defendant admitted this law was clear. (PSMF ¶ 35). Likewise, the United States' official position since June 23, 2009, when a card's expiration date is electronically printed on a receipt, "there is liability for such damages if the receipt was printed after June 3, 2008." (PSMF ¶ 34).

When the law is clear, a defendant can be found to have willfully violated it. *Shell Oil*, 678 F.3d at 489 (*citing Safeco*, 551 U.S. at 69); *Todd v. Target Corp.*, 10 C 5598, 2012 U.S. Dist. LEXIS 44362 (N.D. Ill. March 30, 2012) (denying the defendant's motion for summary judgment on the issue of willfulness where the court held the document at issue a "receipt" as that term is used in 15 U.S.C. § 1681c(g)(1)). Here there is no any reasonable interpretation that 15 U.S.C. § 1681c(g)(1) does not prohibit the printing of expiration dates on electronically printed receipts. 15 U.S.C. § 1681c(g)(1); 15 U.S.C. § 1681n(d); *Shell Oil*, 678 F.3d at 488 ("The Act does its work by limiting the number of exposed digits"); *Tommy Hilfiger*, 671 F.3d at 378; *1-800 Contacts*, 615 F.3d at 798. Therefore, as a question of law Plaintiff is entitled to summary judgment in her favor.

**II.     Alternatively BMW Knowingly Violated FACTA, which is a Willful Violation**

"Evidence of knowing violations of FCRA is relevant to a claim of willfulness, . . . but then *Safeco*'s recklessness analysis would not apply." *Fuges v. Southwest Fin. Servs., Ltd* 707

F.3d 241, 249 n. 14 (3rd Cir. 2012) (*citing Safeco*, 551 U.S. at 56-57) (noting that knowing violations of FCRA are willful by definition.) "[K]nowing noncompliance also, of course, constitutes a willful FCRA violation." *Id*., at 249 n. 13 (*citing Safeco*, 551 U.S. at 57; *Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d Cir. 1997)) (acknowledging that an investigative policy could constitute a willful FCRA violation if adopted either "knowing that policy to be in contravention of the rights possessed by consumers pursuant to ... FCRA or in reckless disregard of whether the policy contravened those rights"). Here, BMW admittedly knew about 15 U.S.C. § 1681c(g)(1)'s requirements, received notice thereof and was contractually required to suppress payment cards' expiration dates from electronically printed receipts it provided the cardholder at the point of sale or transaction. (PSMF ¶¶ 6-11). Therefore, alternatively as an issue of fact, Plaintiff is entitled to summary judgment in her favor.

## CONCLUSION

WHEREFORE, for the reasons stated above, Plaintiff requests this Honorable Court to deny BMW's motion for summary judgment, and grant Plaintiff's cross-motion for summary judgment on a class basis regarding the form of the February 11, 2014 receipt, and individually as to the January 8, 2014 receipt.

                                              Respectfully submitted,

                                              <u>s/ Curtis C. Warner</u>
                                                 Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
1400 E. Touhy, Ste. 425
Des Plaines, IL 60018
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com